UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
Case No. 3:20-cv-00786-BJD-PDB

DELROY A. CHAMBERS, JR.,

    Plaintiff,

v.

COMPASS PROPERTY
MANAGEMENT GROUP, LLC,

    Defendant.
_____/

## FIRST AMENDED COMPLAINT
### and
### JURY DEMAND

    Plaintiff, Delroy A. Chambers, Jr., by and through his undersigned attorneys, files this First Amended Complaint for injunctive and declaratory relief, damages, costs, and attorneys' fees against Defendant, Compass Property Management Group, LLC, and as good grounds states as follows:

### PRELIMINARY STATEMENT

    1.    This action arises as a result of Defendant's discriminatory actions perpetrated against Black people with respect to the rental of a home located at 466 Bentwood Lane, Unit A, Orange Park, Florida 32073 (the "Dwelling").

    2.    Specifically, Defendant has violated the Fair Housing Act by, among other things: refusing to negotiate, and otherwise making unavailable and denying the Dwelling to Mr. Chambers because of race.

## JURISDICTION AND VENUE

3. Jurisdiction is invoked pursuant to 42 U.S.C. § 3613(a), in that Plaintiff asserts his claims of housing discrimination in a civil action, and also pursuant to 28 U.S.C. §§ 1331, 2201 and 1343(a)(4), in that this is a civil action seeking to redress the deprivation of the right to fair housing secured to Plaintiff by the Fair Housing Act.

4. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Plaintiff seeks permanent injunctive relief pursuant to Rule 65, Federal Rules of Civil Procedure.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) in that the subject property is located in this district, the events and/or omissions giving rise to the claims herein occurred in this district, and the Defendant's principal place of business is in this district.

## PARTIES

6. Plaintiff, Delroy A. Chambers, Jr., is a Black male that serves as a fair housing tester who seeks to enforce fair housing laws so that people are protected from discriminatory housing practices. Mr. Chambers attempts to accomplish these goals by engaging in testing for fair housing violations and pursuing enforcement of meritorious claims, among other things. In this capacity, Mr. Chambers poses as a renter or purchaser for the purpose of collecting evidence of discriminatory housing practices, without intent to rent or purchase a home. At all relevant times, Mr. Chambers was acting in this capacity as a tester when he conducted an investigation into the discriminatory actions perpetuated by Defendant.

7. As a fair housing tester and advocate dedicated to advancing the rights of those historically discriminated against, Mr. Chambers attempts to locate housing providers and advertisers in order to test their compliance with various fair housing laws. Mr. Chambers

conducts such testing efforts consistent with the guidance and instructions outlined by the U.S. Department of Housing and Urban Development (HUD), housing advocacy groups, and established case law.

8. Mr. Chambers is deeply committed to fair housing and the goals of the Fair Housing Act. Mr. Chambers was and continues to be adversely affected by the acts, omissions, policies, and practices of the Defendant.

9. Defendant, Compass Property Management Group, LLC, is a Florida Limited Liability Company that is engaged in the business of real estate and is comprised of licensed real estate professionals, including real estate sales associate Tara Dulitz, who was an employee of Defendant Compass Property Management Group, LLC, at all relevant times.

## FACTUAL ALLEGATIONS

10. While investigating discrimination in the housing market in May 2020, Mr. Chambers encountered an advertisement on Trovit for the Dwelling. The advertisement clearly stated that the Dwelling was subject to a policy, which requires every prospective tenant to have "low to no criminal background," in order to qualify to rent the Dwelling

11. The advertisement also included the email address "Tara@CompassPMG.com" with a notation that any questions should be sent to that email address.

12. CompassPMG.com is Defendant's website.

13. On the "About Us" section of Defendant's website, the email address "Tara@CompassPMG.com" is listed as belonging to Tara Dulitz, who is identified as being employed as one of Defendant's Property Managers. She is described on Defendant's website as follows: "[t]he 'Enforcer'. Tara worked in the maintenance department for 8 years before realizing she had bigger dreams. Dreams of managing investment homes for absentee owners.

She specializes in taking middle of the night emergency calls, code enforcement, and dealing with HOA matters."

14. Tara Dulitz is and was an employee of Defendant, who is and was at all relevant times registered and listed as an active Real Estate Sales Associate for Defendant with the Florida Department of Business and Professional Regulation. *See* Exhibit 1, Related License Information for Tara Dulitz.

15. As part of Mr. Chambers's fair housing testing efforts described above, Mr. Chambers, posing as a potential renter, attempted to negotiate for the rental of the Dwelling with Defendant by confirming the availability of the Dwelling, and sent an email to Defendant's employee Tara Dulitz, at the email address listed on the advertisement and Defendant's website.

16. Defendant, through its employee, Tara Dulitz, responded by confirming the availability of the Dwelling and provided information about when the Dwelling would be available for showings.

17. Mr. Chambers continued the test by asking Ms. Dulitz for additional details regarding the "low to no criminal background" policy, and asked whether a criminal background would result in an automatic denial of the Dwelling, as a result of the policy.

18. In response, Ms. Dulitz stated the policy is to automatically deny the Dwelling to anyone with a criminal background that included certain categories of crimes.

19. Mr. Chambers responded by indicating that he had a felony arrest in 2013, and provided details regarding the arrest. This arrest – which did not result in a conviction - was for a crime that was included in the categories of crimes that would result in an automatic denial of the Dwelling, pursuant to the policy.

20.     In response, Ms. Dulitz did not ask whether the arrest resulted in a conviction or convictions, and instead plainly stated: "Yes, we would decline your application. So sorry I couldn't help."

21.     As a result, Defendant, through its agent, Ms. Dultiz, refused to negotiate and otherwise made the Dwelling unavailable and denied the Dwelling to Mr. Chambers, based solely on its criminal background policy.

22.     In sum, Mr. Chambers confirmed that Defendant's "low to no criminal background" policy is a blanket prohibition serving to refuse rentals of the Dwelling to Mr. Chambers and all other prospective tenants that have any criminal background that includes certain categories of crimes, including arrests, regardless of whether those arrests resulted in a conviction and without consideration of a police report or any other additional facts beyond the existence of the arrest itself.  Such a policy is unlawful under the Fair Housing Act, as it has a disparate impact on Black people, and fails to serve a substantial, legitimate, nondiscriminatory interest of the housing provider.

23.     Mr. Chambers also later noted that Defendant had several other properties listed for rent on various internet websites, which similarly indicated that those properties were subject to the same criminal background policy.

24.     Such actions and statements serve to discourage Mr. Chambers from applying, inspecting and renting the Dwelling; and restrict the choices of Mr. Chambers by word or conduct in connection with seeking, negotiating for, renting the Dwelling so as to perpetuate, or tend to perpetuate, segregated housing patterns, or to discourage or obstruct choices in a community, neighborhood or development.  As such, these actions constitute efforts to deprive Mr. Chambers of housing opportunities.

25. HUD has found that "where a policy or practice that restricts access to housing on the basis of criminal record has a disparate impact on individuals of a particular race … such policy or practice is unlawful under the Fair Housing Act if it is not necessary to serve a substantial, legitimate, nondiscriminatory interest of the housing provider." *See* HUD, "Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions" (April 4, 2016).

26. According to recent local, regional, and national data; media, academic and governmental studies; and HUD findings; including, but not limited to, data from the U.S. Census Bureau, the Florida Department of Law Enforcement, the Federal Bureau of Investigation, the U.S. Department of Justice, and Florida's Offender Based Transaction System, Black people are arrested, convicted, and imprisoned at vastly disproportional rates in Florida and the country as a whole, as well as in Clay County, Florida, where the Dwelling is located.

27. For instance, this data demonstrates that in 2018, Black people were arrested, with respect to felonies, at a rate more than double their proportion of the general population nationwide, comprising 27.4% of arrestees (all offenses, all states), despite only constituting 13.4% of the nationwide population. By comparison, White people were arrested, with respect to felonies, at a rate below their proportion of the general population, comprising 69% of arrestees (all offenses, all states), while comprising a greater proportion (76.5%) of the general population.

28. These disproportionate rates are even more pronounced when limited to the State of Florida and Clay County, Florida where the Dwelling is located. In the State of Florida during the same timeframe, Black people comprised 34.5% of all felony arrestees, despite only constituting 16.9% of the State's population. Comparatively, White people in the State of

Florida were arrested, with respect to felonies, at a rate below their proportion of the general population, comprising 64.6% of all felony arrestees statewide, despite comprising 77.3% of their respective populations.  In Clay County, Black people comprised 21.8% of all arrestees in 2019, despite only constituting 10.3% of the County's population.  Comparatively, White people in Clay County, were arrested, with respect to all arrestees, at a rate below their proportion of the general population, comprising 77.5% of all arrestees, despite comprising 80% of Clay County's population.

29. The same racial disparities are seen with regards to rates of conviction and incarceration.  In 2018, Black people made up approximately 34% of the country's total prison and jail population (sentenced prisoners under jurisdiction of state or federal correctional authorities), but only roughly 13% of the nationwide population.  In other words, Black people were incarcerated at a rate more than two and a half times their proportion of the general population.  For Black males, in particular, the imprisonment rate of Black males in 2018 was 5.8 times that of White males.

30. Black people in Florida are more likely to be convicted of a felony than similarly situated White people, even after taking into account racially disparate arrest rates.  After controlling for different arrest rates between White people and Black people, Black people are still 35% more likely to be convicted of a felony or misdemeanor than White people who have similar socioeconomic status, live in areas with similar crime rates, and have similar criminal records. Black people are 11% more likely to be convicted of a felony than White people with these similar characteristics.

31. In sum, Black people are arrested, convicted and imprisoned at much higher rates than White people in Clay County, Florida, Florida, as a whole, and the United States.  As such,

Defendant's policy of refusing to negotiate, and to otherwise make unavailable and deny the Dwelling to anyone with an arrest record for certain categories of crimes, regardless of whether the arrests resulted in a conviction and without consideration of a police report or other additional facts, actually and predictably results in a disparate impact to Black people and therefore impacts and disadvantages Black people at significantly higher rates than White people, which in turn, reduces the availably of housing for Mr. Chambers and other Black people, as compared to White people.

32. HUD has found that "[a] housing provider with a policy or practice of excluding individuals because of one or more prior arrests (without any conviction) cannot satisfy its burden of showing that such policy or practice is necessary to achieve a substantial, legitimate, nondiscriminatory interest." *Id.*

33. As such, Defendant's actions in refusing to negotiate with Mr. Chambers, and otherwise making the Dwelling unavailable and denying the Dwelling to him based on its criminal background policy that mandates the automatic denial of prospective tenants that have any criminal background that includes certain categories of crimes, including arrests, regardless of whether those arrests resulted in a conviction and without consideration of a police report or any other additional facts beyond the existence of the arrest itself, is unlawful under the Fair Housing Act, as it has a disparate impact on Black people, and fails to serve a substantial, legitimate, nondiscriminatory interest of the housing provider.

34. Mr. Chambers was angered and insulted that Defendant, through its employee Tara Dulitz, was refusing to negotiate with Mr. Chambers and making the Dwelling unavailable to Mr. Chambers and denying it to him, based on its criminal background policy, which is a blanket prohibition serving to refuse rentals of the Dwelling to Mr. Chambers and all other

prospective tenants that have any criminal background that includes certain categories of crimes, including arrests, regardless of whether those arrests resulted in a conviction and without consideration of a police report or any other additional facts beyond the existence of the arrest itself.

35. As a Black person who has been the subject of discrimination throughout his life, Mr. Chambers is particularly sensitive to discriminatory practices. As such, Mr. Chambers was insulted and emotionally distressed by being subjected to discriminatory housing policies by Defendant and its employee.

36. Mr. Chambers was and is saddened, angered, and insulted by the fact that the Defendant, through its employee, was refusing to negotiate with Mr. Chambers and making the Dwelling unavailable to Mr. Chambers and denying it to him, based on a criminal background policy that has a discriminatory impact and serves no substantial, legitimate, nondiscriminatory interest. Mr. Chambers has spent a significant amount of time thinking about what occurred and all the other Black people who may have had housing made unavailable to them by Defendant based on its criminal background policy, which is a blanket prohibition serving to refuse rentals of the Dwelling to Mr. Chambers and all other prospective tenants that have any criminal background that includes certain categories of crimes, including arrests, regardless of whether those arrests resulted in a conviction and without consideration of a police report or any other additional facts beyond the existence of the arrest itself.

37. Defendant's unlawful conduct proximately caused Mr. Chambers to suffer the aforementioned emotions, which have manifested into stress, unpleasant rumination, mental strain, and feelings of indignity, hopelessness and anxiety about race discrimination in housing.

38. Consistent with his fair housing testing efforts, Mr. Chambers has a practice of continuing to monitor and test those entities and individuals found to have been discriminating. To those ends, Mr. Chambers has and will continue monitoring Defendant and its agents in order to determine its ongoing compliance with the Fair Housing Act, and will continue to do so throughout the pendency of this matter and after its conclusion.

## COUNT 1:
## VIOLATION OF THE FAIR HOUSING ACT

39. Plaintiff repeats and realleges paragraphs 1 through 38 as if fully set forth herein.

40. This Count 1 is brought by Plaintiff against the Defendant, Compass Property Management Group, LLC.

41. Defendant is liable to Plaintiff for all injuries caused by the Fair Housing Act violations committed by Defendant, and its agents.

42. Defendant Compass Property Management Group, LLC authorized Ms. Dulitz to act for it when he committed the Fair Housing Act violations alleged herein.  Ms. Dulitz accepted the undertaking of acting on behalf of Defendant Compass Property Management Group, LLC when he committed the Fair Housing Act violations alleged herein.  Defendant Compass Property Management Group, LLC had control over Ms. Dulitz when he committed the Fair Housing Act violations alleged herein.

43. In light of the aforementioned factual allegations, statistical data, and HUD findings:

> a. Defendant's criminal background policy is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective such as a practical business, profit, policy consideration, or requirement of law;

  b. there is a robust causal link between Defendant's policy and a disparate impact on Black people that shows that the specific practice is the direct cause of the discriminatory effect;

  c. the disparity caused by Defendant's policy has an adverse effect on Black people;

  d. the disparity caused by Defendant's policy is significant; and

  e. there is a direct link between the disparate impact and Mr. Chambers's injury.

44. As such, Defendant has violated the Fair Housing Act by refusing to negotiate with Mr. Chambers, and otherwise making the Dwelling unavailable and denying the Dwelling to him, based solely on its criminal background policy and because of race.

45. A discriminatory purpose, not any legitimate reason, was a motivating factor behind Defendant's aforementioned discriminatory actions and/or omissions.

46. As a result of Defendant's discriminatory conduct - committed despite being engaged in the business of real estate, coupled with Plaintiff's ongoing monitoring efforts - Plaintiff has suffered, is continuing to suffer, and will in the future suffer irreparable loss and injury and a real and immediate threat of future discrimination by Defendant.

47. Defendant's unlawful conduct and actions constitute direct evidence of discrimination and proximately caused Plaintiff's damages as described above.

48. In engaging in this unlawful conduct described above, Defendant acted recklessly or intentionally. This is evidenced, in part, by the fact that Defendant is engaged in the real estate business, and despite that fact, chose to engage in unlawful discrimination.

49. As a tester who has been treated in a discriminatory fashion by Defendant, Mr. Chambers has suffered an injury in precisely the form the Fair Housing Act was intended to guard against, and therefore he has standing to maintain his claims under the Act's provisions.

50. Accordingly, Plaintiff is aggrieved by Defendant's discriminatory actions in violation of the Fair Housing Act.

WHEREFORE, Plaintiff respectfully requests that the Court:

A. declare the actions, omissions, policies, and procedures of Defendant, complained of herein to be in violation of the Fair Housing Act;

B. enter a permanent injunction enjoining Defendant, its successors, and its servants, agents and employees, and all those acting in concert with it, from promoting, furthering, or enforcing any housing requirement policies that include blanket prohibitions serving to refuse rentals of the Dwelling to Mr. Chambers and all other prospective tenants that have any criminal background that includes certain categories of crimes, including arrests, regardless of whether those arrests resulted in a conviction and without consideration of a police report or any other additional facts beyond the existence of the arrest itself., which actually or predictably result in a disparate impact on Black persons, regardless of the wishes of its clients and/or rules, bylaws, or other governing documents of any related associations;

C. award compensatory damages to Plaintiff against Defendant, to compensate Plaintiff for, among other things, the emotional distress, anger, insult and injury caused by Defendant's discriminatory actions;

D. award Plaintiff his costs and reasonable attorneys' fees in this action; and

E. award Plaintiff such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable in this matter.

Respectfully submitted,

Joshua A. Glickman, Esq.
Florida Bar No. 43994
josh@sjlawcollective.com
Shawn A. Heller, Esq.
Florida Bar No. 46346
shawn@sjlawcollective.com

Social Justice Law Collective, PL
974 Howard Avenue
Dunedin, Florida 34698
(202) 709-5744
(866) 893-0416 (Fax)

Attorneys for the Plaintiff


By:  *s/ Shawn A. Heller*
         Shawn A. Heller, Esq.


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, on this 22nd day of September, 2020, which will send a notice of electronic filing to all attorneys of record.

By:  *s/ Shawn A. Heller*
         Shawn A. Heller, Esq.